(32 Misc. Rep. 330.)

### MACK v. CITY OF BUFFALO.

(Supreme Court, Special Term, Erie County. August, 1900.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—ELECTION NOTICES.

Code Civ. Proc. § 3317, provides that, except as otherwise specially prescribed by law, the proprietor of a newspaper is entitled to 75 cents per folio for the first and 50 cents for each subsequent publication of a summons, notice, order, citation, or other advertisement required by law to be published. Laws 1897, c. 379, § 4, amending Laws 1896, c. 909, § 10, provides that a list of the election districts in each city at which the meeting for registration and election shall be held shall be published in two newspapers in the city advocating the principles of the party casting the most votes. *Held*, that a contract by the common council of a city to pay more than 75 cents per folio for the publication of election notices was not invalidated by section 3317, since such section applies only to the rate of compensation for publishing notices and advertisements relating to judicial proceedings under the Code, and not to election laws.

2. STATUTES—CONSTRUCTION.

The exception in Code Civ. Proc. § 3317, providing that, except as otherwise specially prescribed by law, the proprietor of a newspaper is entitled to a certain compensation per folio for publishing a summons, notice, order, citation, or other advertisement required by law to be published, does not extend its operation by implication to other notices.

Action by Norman E. Mack against the city of Buffalo to recover for the publication of pre-election notices. Demurrer to defendant's answer sustained.

Martin Carey, for plaintiff.

William H. Cuddeback, for defendant.

LAMBERT, J. The plaintiff, who is the owner and proprietor of a daily newspaper published in the city of Buffalo, called The Times, entered into a contract with the defendant for the publication of certain pre-election notices at the agreed price and compensation of $2,016. There are no facts in issue. The only question presented for the court's determination is raised by the plaintiff's demurrer to the defendant's answer, and necessitates the consideration of section 4 of chapter 379 of the Laws of 1897, amending section 10 of chapter 909 of the Laws of 1896, and section 3317 of the Code of Civil Procedure, which respectively provide:

"Sec. 10. On the first Tuesday of September in each year, * * * the common council of each city * * * shall designate the place of each election district in the city * * * at which the meeting for the registration of electors and the election shall be held during the year. * * * The officers authorized to designate the registration and polling places in any city * * * shall cause to be published in two newspapers within such city a list of such places so designated, and the boundaries of each election district in which said registration and polling place is located. Such publication shall be made in the newspapers so selected upon each day of registration and the day of election, and on the day prior to each such days. One of such newspapers so selected shall be the one which advocates the principles of the political party polling the highest number of votes in the state at the last preceding election for governor, and the other newspaper so designated shall be the one which advocates the principles of the political party polling the next highest number of votes for governor at said election. * * * In selecting the newspapers in which such publications are to be made the said board shall keep in view the object of giving the widest publicity thereto."

Section 3317 of the Code of Civil Procedure: "Except as otherwise specially prescribed by law, the proprietor of a newspaper is entitled, for publishing a summons, notice, order, citation or other advertisement, required by law to be published, other than the session laws, for each folio, to seventy-five cents for the first insertion, and fifty cents for each subsequent insertion. The compensation for publishing the session laws, must be fixed by the board of supervisors, at not more than fifty cents for each folio."

The defendant, while admitting the making of the contract sued upon, and its complete performance on the part of the plaintiff, contends that the common council had no authority to make the contract for a price greater than that specified in section 3317 of the Code, supra, to wit, 75 cents per folio of 100 words, and that it is, therefore, void, because it is undisputed that the price agreed upon for the insertion of these notices was greatly in excess of 75 cents per folio. Section 10 of the election law, supra, directs the common council of every city within the state, except New York, to publish notices at fixed intervals before election, designating the registration and polling places and their boundaries, in two newspapers published within such city, to be selected in a manner therein provided. The language of the act is mandatory, and it was the plain duty of the common council of the city of Buffalo to comply with its direction. It did so. By resolution that body authorized the city clerk to make the contract in question, in performance of which by the plaintiff the notices so required by said statute were duly and timely published. The revised charter of the city of Buffalo (sections 449, 450) limits the compensation to be paid for the publication of "all matters required by law or the ordinances to be published in the official paper" to the rates allowed by law for the publication of legal notices (Code, § 3317); but these charter provisions do not relate to the publication of the notices in question, for the reason that they are special notices or advertisements, which are not required "by law or the ordinances to be published in any official paper." By section 10 of the election law the common council is directed to cause such notices to be inserted in two newspapers published within the city, to be selected by it in accordance with the provisions thereof. The official paper, simply by virtue of its being the official paper, has no more legal right to publish them than any other paper of the same political faith and of equal circulation published within the city. The plaintiff is not the owner or publisher of the "official paper," and did not make a proposal for the publication of these notices, pursuant to a notice or advertisement under section 449 of the charter. The city clerk did not, and could not, ask for such a proposal according to the terms thereof; and the provisions of these sections did not, therefore, become part of the plaintiff's offer, and form no part of the contract entered into with the city. The act under consideration contains no provision regulating or restricting the price to be paid for the publication of such notices; the charter does not fix a maximum rate for the publication of special matters; sections 449 and 450 have no application; and, in the absence of other legislative prohibition or limitation, there is no restriction upon the power of the common council to make all contracts for the printing and pub-

lication of such special notices required by law to be printed or published at a fair, just, and reasonable rate of compensation, for, the duty having been imposed upon that body by the legislature, everything requisite or necessary to its performance is implied.

The corporation counsel, however, relies upon section 3317 of the Code, supra, to defeat the plaintiff in his cause of action. This section was originally enacted in 1859 (chapter 252), under the title "An act in relation to the publication of legal notices," and provides that the proprietor of a newspaper may charge for the publishing of "any notice, order, citation, summons or other proceeding or advertisement required by law to be published" not more than 75 cents a folio, etc. In 1880 the provisions of chapters 178 and 245 were inserted in the Code of Civil Procedure under title 5 of chapter 21, entitled "Sums Allowed as Fees," and became section 3317, which now contains, in substance, the earlier provisions of the legislature on the subject. The words used in specifying the different advertisements, the cost for the publication of which was restricted by these several enactments, are precisely similar; nor have the provisions of the act been expressly extended since 1859 by the addition of other classes of advertisements. These words have well-defined meanings in legal phraseology, and refer to certain steps in civil actions and proceedings all of one class or grade. It is a well-settled doctrine that, where general words follow specific words designating certain special things, the general words are to be limited to cases of the same general nature as those which are specified. Applying this familiar rule of construction, the effect of the phrase, "or other advertisement required by law to be published," immediately following, as it does, the specific enumeration of one of the commonest classes of advertisements known to the law, cannot be extended to include or apply to another class of a superior grade, and which is manifestly of greater importance. No doubt would exist as to the restricted construction which should be given to this section of the Code, limiting its application and effect to the particular class of notices mentioned, were it not for the exception, "other than the session laws." Generally, the effect of such a saving clause is to carve out from the provisions of the statute that which would otherwise be deemed to be subject to its operation, were it not for the exception. Where the language employed is ambiguous, and creates doubt and uncertainty as to whether some particular thing should be included, the exception of another thing of the same general nature, class, or grade will sometimes enable the courts to determine whether the first should be embraced. But this rule is not unyielding, and should not be given universal application. If, by construing section 3317 as embracing every class of notices of the same general nature and description as that expressly excepted from the operation of said act, the legislative intent would be defeated, or its well-defined policy or purpose frustrated, the courts would refuse to give sanction to such an arbitrary construction. In the interpretation of statutes and their application, courts will always strive to give them the effect intended by the legislature whenever it can be ascertained, even though such a con-

struction seems contrary to the strict letter of the statute, and to this cardinal rule all others must yield. Frequently words and phrases, broad and comprehensive in themselves, are limited, qualified, and restricted by reference to some other part of the statute in which they are used, or even to extraneous facts and circumstances to which they relate or are intended to apply; while, on the contrary, weak, narrow, and meaningless words will not be permitted to defeat its spirit and manifest purpose. Of course, the language of the act itself should disclose the real intention or mind of the legislature, and, primarily, it should be carefully scanned; but, if doubt still exists as to the force and effect which was intended to be given to particular terms, courts will then refer to the circumstances under which, and the purposes for which, the statute was enacted, and, where two constructions can be given, the mischief aimed at is considered, and that one adopted which is most reasonable, just, and effective to correct the evil. Were we to give that construction to section 3317 suggested by the defendant, we must assume the legislature intended that notices and advertisements of every nature and description required by law to be published, the rate of compensation for publication of which was not elsewhere specially prescribed, would be within its provisions. Clearly, this is not the case, else why did the legislature, by section 450 of the revised city charter, supra, give it a restrictive application by making it only applicable to contracts entered into for the publication of matters required by law to be published in the official paper during the ensuing year? Applying the maxim, "Expressio unius est exclusio alterius," all other matters not so required to be published in the official papers must necessarily be excluded from its provisions. Another indication of the legislature's intention to give section 3317 a restrictive application is to be found in section 3332 of the Code of Civil Procedure, the last section of chapter 21 and title 5, within which is found section 3317. That section provides:

"Section 3332. (This title applies to civil cases only.) Except as otherwise expressly prescribed therein, this title does not apply to a service rendered in a criminal action or special proceeding, in a court, or before an officer."

Again, the character of the notices required to be published pursuant to the election law precludes the assumption that section 3317 applies. The form of notice published was one of others required to be published by the same act, and, if section 3317 is read into the statute, it must necessarily apply with equal force to all. Section 61 of that law provides for the publication of the lists of candidates, and directs that a fac simile of the emblems or devices selected and designated to represent the different political parties shall also be published. The statutory construction law defines a folio as 100 words, each figure employed to be counted as one word. How, then, can the space so occupied by the printing of an emblem be counted,—as a word or a figure? It is hardly fair to assume that the legislature, which has expressly made provision for the counting of a figure, would at the same time leave the publication of matter requiring, perhaps, space enough to publish several folios,

without directing some way to compute the compensation to be paid for such publication. It not unfrequently happens that such clauses as the one under consideration, "other than the session laws," are inserted by the legislature under an erroneous assumption of what their legal effect may be, or from excessive caution to prevent the possibility of a misinterpretation of the act, which might otherwise be construed to include within its provisions that which was not so intended. As was said in Tinkham v. Tapscott, 17 N. Y. 141, and cited with approval in Baggaley v. Iron Co., 62 U. S. App. 687, 33 C. C. A. 202, 90 Fed. 636:

"It is matter of common experience that savings and exceptions are often introduced from abundant, and even excessive, caution, and it would sometimes prevent the intention of the author of the writing if every other thing of the same general nature as that excepted should be regarded as embraced in the general words."

From a careful review of the statutes pertaining to the case at bar, the conclusion is irresistible that the legislature intended that section 3317 should only apply to restrict the rate of compensation for the publication of notices and advertisements relating to civil actions and proceedings under the Code, except where it was otherwise specially prescribed by law, and that the insertion of the exception referred to should not be given the effect of extending the operation of the act by implication. The Code of Civil Procedure, as is indicated by its contents and title, "An act relating to courts, officers of justice, and civil proceedings," relates only to civil proceedings, and nothing found therein connects it with the general election law, which is full and complete in all particulars, and does not rely upon the Code for the enforcement of any of its provisions, nor in fact make any reference to it. It is inconceivable that the legislature intended to make applicable to this elaborate codification of the election law the Code of Civil Procedure, or any of its provisions, without in some manner indicating such a purpose. The aim of the legislature seems unmistakable,—to provide, as far as practicable, definite information for the electors respecting the places of registration and voting, and the emblems and names of the candidates of the respective parties. To accomplish this end, it specifically directed how the newspapers should be selected with the view of bringing notice to the greatest possible number, but omits any suggestion respecting the cost of their publication. We are of opinion that section 3317 of the Code is inapplicable, and the demurrer to the defendant's answer is sustained.

Demurrer sustained.